## Weingreen v. Gomberg

*Harry Lore* and *Dorfman, Pechner, Sacks & Dorfman,* for plaintiff.

*John F. Naulty,* for defendants.

WATERS, J., May 11, 1964.—In this trespass action plaintiff sued the owners of premises 5722 Vine Street, in Philadelphia, William May and his wife, and their tenants, Herman and Abraham Gomberg, who operated a poultry business in the ground floor front of the premises. The suit is for damages for personal injuries suffered by plaintiff when he fell on the sidewalk on December 5, 1957, in front of the poultry store. The cause of action is defendants' negligence in failing to remove snow and ice from the sidewalk to provide safe passage for pedestrians.

Judgment having been entered against Mr. and Mrs. May, the owners, for failure to enter an appearance, plaintiff obtained an order severing the case against them and proceeded to a jury trial against the Gombergs. At the close of plaintiff's evidence the trial judge entered a compulsory nonsuit. The court en banc, after hearing argument, refused plaintiff's motion to take off the nonsuit, and plaintiff has appealed.

It is unnecessary at this point to review the evidence respecting the weather and the condition of the sidewalk at the time of the accident or the nature and extent of plaintiff's injuries, other than to point out that the condition complained of as causing plaintiff's fall arose solely from the alleged negligent failure to remove snow and ice from the sidewalk and not from any defective condition of the building or any negligent failure properly to maintain the building itself. The nonsuit was entered on the sole ground that the primary responsibility for maintenance of the sidewalk in safe condition was, under our Pennsylvania decisions, on the owners of the property and not on the tenants. To that point alone, therefore, we shall address our inquiry.

The record discloses that 5722 Vine Street is located on the southeast corner of Alden and Vine Streets. It is a two-story brick structure with a frontage of 16 feet on Vine Street and runs back along the east side of Alden Street 77 feet. There is a 15-foot sidewalk at the Vine Street end of the property and a 10-foot sidewalk on the Alden Street side. On September 1, 1957, the Mays entered into a written lease to the Gombergs for "all that certain first floor and cellar of premises 5722 Vine Street," to be occupied as a "live and dressed poultry business," which lease was in effect at the time of the accident which gave rise to this suit. The lease provided, inter alia, "The lessee shall keep the demised premises in good condition during the

continuation of this lease, remove all ashes, rubbish and refuse matter therefrom."

Plaintiff argues that the Gombergs were in possession of the first floor of the premises, were conducting a business therein, had covenanted to keep the demised premises in good condition, and were therefore under a duty to remove accumulations of snow and ice from the sidewalks to provide safe passage for pedestrians. He cites also the provision of section 10-807 of the Philadelphia Code requiring "the occupant of occupied property or premises and the owner of unoccupied property or premises" to clear a path in the abutting sidewalk not later than six hours after the cessation of a snowfall.

The difficulty with these contentions is that defendant tenants, the Gombergs, were not in possession of the entire building; they were not, in fact, in possession of the entire first floor. The lease, which is a standard printed form, contains in the description of the demised premises the words "All that certain" as part of the printed form, followed by the words "first floor and cellar" in typewriting. It is clear that the leasing did not embrace the entire first floor, for the evidence shows that Mr. and Mrs. May, the owners, had an entrance to the building on the Alden Street side and occupied as dwelling quarters that portion of the first floor to the rear of the business quarters occupied by the Gombergs. We assume that the second floor was used for sleeping purposes, though there was no evidence on this point; but the evidence is clear that on the first floor the Mays had their living-room, dining-room and kitchen, and that the kitchen had been created by conversion of what had formerly been an attached garage space at the rear end of the building. As we have said, the Mays' access to their portion of the premises was through a doorway on the Alden Street side; the Gombergs had a separate doorway to their poultry shop at the front corner of the building.

In this situation, what were the respective responsibilities and liabilities of the two occupants, owners and tenants, for the maintenance of the sidewalk?

The applicable principles were succinctly stated by the late Mr. Justice Stearne in Higgins v. Polito, 348 Pa. 152, 154 (1943), as follows: "Where an owner leases an entire property to a single tenant, it is well established that such a tenant is liable for injuries occurring to a third person because of a failure to repair sidewalks: Phila. v. Merchant & Evans Co., 296 Pa. 126, 145 A. 706; Lindstrom v. Penna Co., 212 Pa. 391, 61 A. 940. The instant case, however, is one of *multiple tenancy* and the opinion of Justice, later Chief Justice, Schaffer in Bruder v. Philadelphia et al., 302 Pa. 378, 153 A. 725, is controlling. It is there decided that a tenant who has leased only one part of a building's ground floor is not liable to third parties for defects in the structure's sidewalk. In such a case, the landlord is liable, and if he has a right over against a tenant because of a contract or by reason of duty owing by the tenant to him, he may recoup himself by action against the tenant. By holding the owner primarily liable in cases where a multiple tenancy exists, the law, instead of diffusing responsibility among the various tenants, has properly concentrated it in a single individual from whom an injured third party can more easily seek redress. See Baxter et al. v. Homestead Boro., Ap., et al., 120 Pa. Superior Ct. 182, 182 A. 68; Cooker et al. v. Great Atlantic & Pacific Tea Company, 120 Pa. Superior Ct. 239, 182 A. 71."

The case before us is not, in the same sense as Higgins v. Polito, supra, one of multiple tenancy, but it is certainly a case of multiple occupancy, for the Gombergs occupied only the front portion of the ground floor while the rear portion and all of the second floor were occupied by the Mays, owners of the building. It

was suggested by Mr. Justice, now Chief Justice, Bell in Downes v. Hodin, 377 Pa. 208, 215 (1954), that "an owner of property who leases part or all of his building to others may or may not be liable to third persons injured on the sidewalk of the leased premises, depending upon the facts in each case;" but no case has been cited to us, nor has our search disclosed a case, in which liability for maintenance of the sidewalk has been placed on a tenant occupying only a portion of the first floor. To the contrary, as was said in Baxter v. Borough of Homestead, 120 Pa. Superior Ct. 182, 185 (1935), "This court has also held that even where the whole of the first floor is leased, the owner is nevertheless responsible where the owner occupied the remainder of the building, with access to the sidewalk from the front of the building: City of Butler v. Western Union Telegraph Co., 93 Pa. Superior Ct. 533." It is worth noting that in Bruder v. Philadelphia, cited in Higgins v. Polito, supra, the court thus limited its decision to the precise situation then presented: "If the entire first floor had been leased by the American Stores Company, a different situation would exist, and it might well be that it would be responsible. We express no opinion on this; we will determine that question when a case before us presents the fact of a single tenant on the first floor."

We do not regard the decision in Great Atlantic & Pacific Tea Co. v. Boyles, 102 F. 2d 343 (1939), as controlling in the present case. There the tenant of the first floor and basement was held liable for a sidewalk defect, and Judge Maris, of the Court of Appeals for the Third Circuit, reviewed the Pennsylvania cases to which we have made reference. But in that case, as the opinion shows, the facts differed materially from those before us here; the tenant occupied all, not a part, of the first floor; the owner of the building was not in occupancy of the remainder of the premises; and the

evidence showed that portions of the upper floors were actually used by the tenant.

Nor do we think that the provisions of section 10-807 of the city's code of ordinances fasten liability on the tenant in the circumstances of this case. That section provides that "not longer than six hours after snow has ceased to fall the occupant of occupied property or premises and the owner of unoccupied property or premises shall clear a path in the sidewalk upon which such property or premises abuts," and sets forth a fine or imprisonment for failure to comply with the provision. We cannot reasonably interpret this provision other than as placing the responsibility for snow removal on the owner of premises which the owner occupies, regardless of whether or not portions of the premises have been let out to others. It may be, though we do not think it is so in this case, that an owner-occupant could have a right of action against a tenant for failure to maintain the sidewalk in proper condition where the contract between them placed such duty on the tenant; but the primary liability remains on the owner in possession both under the ordinance provisions and, as we read them, under the authorities which we have reviewed herein.